## COLDWELL v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. March 27, 1919.)

No. 1360.

1. CRIMINAL LAW ⊙══1144(16)—REVIEW—PRESUMPTION—ABSENCE OF EVIDENCE.
   Where the evidence on which the jury returned verdict of guilty has not been reported, the Circuit Court of Appeals must accept the verdict as fully sustained by the evidence, if the allegations in the indictment were sufficient in law to sustain it.

2. WAR ⊙══4—ESPIONAGE ACT—INDICTMENT.
   Facts set out in indictment charging defendant with willfully attempting to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States, etc., held to constitute a violation of Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c).

3. WAR ⊙══4—ESPIONAGE ACT—ATTEMPT TO CAUSE INSUBORDINATION—CIRCUMSTANCES.
   The time and place when and where statements charged to have been violative of Espionage Act (Comp. St. 1918, § 10212a et seq.), were made by defendant, and all the surrounding circumstances, should be considered by the jury in reaching a conclusion as to whether their utterance constituted the attempt charged to cause insubordination in the military service of the United States, as well as defendant's intent in making them.

4. ARMY AND NAVY ⊙══40—ESPIONAGE ACT—OBSTRUCTION OF RECRUITING.
   Indictment charging defendant with willfully obstructing the recruiting and enlistment service of the United States, by making certain statements in addressing a public meeting, in violation of Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c), held sufficient.

5. WAR ⊙══4—ESPIONAGE ACT—INCITEMENT OF INSUBORDINATION.
   The language of Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c), making it an offense willfully to attempt to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States, or willfully to obstruct the recruiting or enlistment service, is broad enough to include statements calculated to produce such results when made in presence of persons not in the military or naval forces, providing they are willfully made and with the intent specified.

6. WAR ⊙══4—ESPIONAGE ACT—INCITEMENT OF INSUBORDINATION IN MILITARY SERVICE—OBSTRUCTION OF RECRUITING—QUESTIONS FOR JURY.
   Whether defendant's statements in addressing a public meeting, not consisting of soldiers and sailors, under the circumstances constituted an attempt to cause insubordination, etc., in the military and naval forces of the United States, or obstruction of the recruiting or enlistment service of the country, in violation of Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c), were questions for the jury.

7. WAR ⊙══4—ESPIONAGE ACT—INCITEMENT OF INSUBORDINATION, ETC.—INDICTMENT.
   An indictment charging defendant with violation of Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c), in that his speech to a public meeting was made with intent to cause insubordination, disloyalty, etc., in the military and naval forces of the United States, etc., held not insufficient, as not alleging that defendant's utterances caused any injury to the military or naval service and to the United States.

⊙══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. WAR ⬥⟶4—ESPIONAGE ACT—INCITEMENT OF INSUBORDINATION, ETC.—INSTRUCTION.

In a prosecution for violation of Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c), instructions submitting the questions of the likelihood of defendant's utterances to produce insubordination or refusal of duty in the military service, or obstruction of the recruiting and enlistment service, and the intent with which they were made, *held* proper.

9. CRIMINAL LAW ⬥⟶371(1)—ESPIONAGE ACT—INCITEMENT OF INSUBORDINATION, ETC.—EVIDENCE.

In prosecution for violation of Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c), by inciting insubordination in the military service and obstructing recruiting, circulars distributed by defendant before passage of act, urging that persons to whose hands they might come should fail to register under the Draft Act, etc., also prior statements in regard to conscription made by defendant, *held* admissible to show intent with which defendant made statements on which his prosecution was based, though he had been indicted for the offense of distributing the circulars.

In Error to the District Court of the United States for the District Court of Rhode Island; Arthur L. Brown, Judge.

Joseph M. Coldwell. was convicted of violating the Espionage Act, and he brings error. Affirmed.

Anthony V. Pettine, of Providence, R. I. (Luigi de Pasquale, of Providence, R. I., on the brief), for plaintiff in error.

Harvey A. Baker, U. S. Atty., of Providence, R. I.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. Joseph M. Coldwell, the defendant below, was indicted and convicted in the District Court of Rhode Island, under title 1, § 3, of the act of Congress approved June 15, 1917, c. 30, 40 Stat. 219, known as the Espionage Act (Comp. St. 1918, § 10212c), which is as follows:

"Sec. 3. Whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies and whoever, when the United States is at war, shall wilfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or shall wilfully obstruct the recruiting or enlistment service of the United States, to the injury of the service or of the United States, shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both."

The indictment contained eight counts and he was tried on the first four. He was charged in two counts with willfully attempting to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States, and in two other counts with willfully obstructing the recruiting and enlistment service of the United States, by making the following statements in addressing a public meeting held in the People's Forum at Providence, R. I., on the 13th day of January, 1918, the United States being then at war with the Imperial German Government, in the presence and hearing of 500 persons to the grand jurors unknown:

---

⬥⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Dunn, Yanyar, and Hiller, who are to serve 20 years in the Atlanta penitentiary, are victims of a damnable system of government, for which those who support it are directly responsible."

"Law is of no avail now. It sleeps in America during the war. Dunn, Yanyar, and Hiller are guilty of no crimes. They merely refused to become uniformed murderers."

In a long parenthesis, in the way of innuendo, it was set out in each count that John T. Dunn, Theodore Hiller, and Adolph Fred Yanyar, residents of Rhode Island, were on the 5th day of June, 1917, between the ages of 21 and 30, both inclusive, and required by law to register under the provisions of Act May 18, 1917, c. 15, 40 Stat. 76 (Comp. St. 1918, §§ 2019a, 2019b, 2044a–2044k), the proclamation of the President, and regulations issued by the President thereunder, and became members of the United States army by virtue of the provisions of the act of May 18, 1917, and the regulations issued thereunder by the President; that they refused to serve as soldiers in the United States army, and were tried for desertion from the service of the United States, before a general court-martial of the United States army, and convicted and sentenced to be dishonorably discharged from the service and to forfeit all pay and allowances due and to become due, and to be confined at hard labor at such place as the reviewing authority might direct, for 20 years; and that the sentence of said court-martial was duly approved, and the United States penitentiary at Atlanta, Ga., designated as the place of confinement. The necessary intent was alleged in each count.

To each of the counts in the indictment the defendant filed a demurrer, assigning in each the following grounds:

First. That the facts therein set forth are not in violation of section 3 of the Espionage Act, so called.

Second. That it does not appear in said count that the divers persons whom the said defendant is alleged to have addressed were persons in the military or naval forces of the United States.

Third. That it does not appear in said count that the alleged utterances of the said defendant caused any injury to the military or naval service and to the United States.

Fourth. That said count of said indictment does not set out facts which constitute any offense against the laws of the United States.

Fifth. That said count of said indictment charges no offense known to the law.

The demurrers were overruled, and at the trial a motion to quash the indictment for the causes assigned in the demurrers was filed, which was denied. At the close of the testimony the defendant moved the direction of a verdict of acquittal for the following reasons:

That the government had failed to show any facts in violation of section 3 of the Espionage Act, so called, or that any person addressed by the said defendant was in the military or naval service of the United States, or that the alleged utterances of the said defendant caused any injury to the military or naval service or to the United States, or that the alleged utterances were made with the intent charged in the indictment; that there was a variance between the proof and the allegations in the indictment, in that the indictment alleged that the

utterances were made "in addressing a public meeting in said Providence, at which said meeting a large number of persons, to wit, five hundred, were present whose names are to the grand jurors unknown," whereas, in truth and as a matter of fact, the government proved that the persons were actually known to the grand jurors.

This motion was denied, and the defendant, having been found guilty by the jury on the first four counts in the indictment, was sentenced to serve a term of imprisonment of three years at hard labor in the United States penitentiary at Atlanta, Ga., on each count, said terms to run concurrently.

[1] The defendant seasonably excepted to the overruling of his demurrers, the denial of his motions, and the admission of evidence relating to the circulation by him of certain circulars prior to the passage of the Espionage Act, and these rulings are assigned as error. No error is assigned because of any instructions given in the charge of the presiding judge to the jury, and at its close counsel for the plaintiff in error said he was perfectly satisfied with it. The evidence upon which the jury returned their verdict of guilty has not been reported. The court submitted to them the determination of whether the words were spoken substantially as alleged, and, if so, whether they were adapted to create the offenses charged, and also the intent with which they were uttered; and we must accept the verdict of the jury in favor of the government on these issues as fully sustained by the evidence, provided the allegations in the indictment were sufficient in law to sustain it.

[2] The first ground of demurrer is that the facts set forth do not constitute a violation of section 3 of the Espionage Act. This act was amended on May 16, 1918, by adding thereto the following:

"Whoever, when the United States is at war, shall wilfully utter, print, write, or publish any disloyal, profane, scurrilous, or abusive language about the form of government of the United States, or the Constitution of the United States, or the military or naval forces of the United States, or the flag of the United States, or the uniform of the army or navy of the United States, or any language intended to bring the form of government of the United States, or the Constitution of the United States, or the military or naval forces of the United States, or the flag of the United States, or the uniform of the army or navy of the United States into contempt, scorn, contumely or disrepute." Chapter 75, § 1 (Comp. St. 1918, § 10212c).

It is contended in argument that, as the defendant was charged with uttering the words set out in the indictment, before the passage of this amendment, this is proof that, without it, the alleged utterances would not be penal. The amendment, however, does not relate to the offenses with which the defendant was charged, but to other and distinct offenses, which may be committed by utterances in regard to the form of government of the United States, the military or naval forces or the flag of the United States, or the uniform of the army or navy of the United States, or by language intended to bring the form of government of the United States, the military and naval forces, the flag, or the uniform, into contempt, scorn, contumely, or disrepute.

The system of government to which the alleged statements of the defendant related was plainly the system of raising an army, which

had been provided by the Conscription Act, passed by Congress, and the regulations promulgated by the President by authority of that act. The characterization of that act and these regulations as "a damnable system of government," and of those who had been sentenced because of violation of these regulations as "victims" of such a system, for which those would be responsible who supported it, could be found by the jury, under the circumstances and the intent set out in the indictment, an attempt "to cause insubordination, disloyalty, mutiny or refusal of duty," not only on the part of those who had become, by registration and the regulations which had been prescribed under the Selective Draft Act, members of the military and naval forces of the United States, but also of those who under the act and regulations were required to perform any duty.

It is urged by counsel that, when the defendant said that the three parties named had been guilty of no crime, he had in mind that they had never been inducted into the military service and that they therefore could not possibly be guilty of desertion, or, in other words, that one cannot desert that which he never joined. But in the innuendo it is alleged that they had become members of the United States army by virtue of the provisions of the act of May 18, 1917, and had refused to serve as soldiers in the United States army, and were tried for desertion from that service before a general court-martial, and convicted, and afterwards sentenced, which sentence was duly approved by the proper military officers. The justification of their conduct, as stated by the plaintiff in error, was, not that they had been convicted of an offense which they had not committed, but that "they merely refused to become uniformed murderers." Certainly the use of such language could be interpreted as an attempt to encourage others to imitate their conduct, and an attempt to breed a spirit of rebellion and disobedience to military law, and also to the requirements of the Selective Draft Act, in the mind of one who had already been inducted into the military or naval forces, or of one who had not yet been inducted into the military or naval service, but was liable to be inducted into that service, by causing him to feel that the service into which he had been or might be called was not an honorable one, in defense of high ideals and the protection of the popular institutions to which he owed allegiance, but that when clothed in the uniform of his country he would be driven to commit acts of murder.

[3] The time and place when and where the alleged statements were made by the defendant, and all the surrounding circumstances, could be considered by the jury, and were properly for their consideration, in arriving at a conclusion in regard to whether their utterance constituted the attempt charged as well as the intent of the defendant in making them. The language attributed to the defendant does not call for any legal or expert knowledge in its interpretation, and the jury was as well able to judge of its adaptability to produce the results alleged as the court.

[4] Was the offense of obstructing the recruiting and enlistment service of the United States with willful intent sufficiently charged in these counts? The government had devised an elaborate scheme with

the regulations which had been promulgated for calling into the military service those between the ages of 21 and 30, inclusive.

We have only to consider the effect that might have been produced if any considerable number of men within the draft age had been induced to believe that the system which had been inaugurated was a "damnable" one, and that service in the naval or military forces might make them murderers, to reach the conclusion that the attempt to implant such a feeling in their minds would obstruct the recruiting and enlistment service of the United States. In order to obstruct it is not necessary that enlistment be actually prevented, or that any one be persuaded from complying with any of the provisions of the Conscription Act. The statute forbids the willful creation of any obstruction that makes the enforcement of the recruiting or enlistment laws more difficult, provided the intent to obstruct is present; and it is a sufficient allegation of the offense if language is alleged to have been willfully used by the defendant which was calculated to make enlistment or recruiting more difficult, provided the intent to effect this result is also alleged.

[5, 6] The second ground upon which the several counts in the indictment are alleged to be insufficient is that it does not appear in them that the persons whom the defendant is alleged to have addressed were in the military or naval forces of the United States. The act makes it an offense to willfully "attempt to cause insubordination, disloyalty, mutiny or refusal of duty in the military or naval forces of the United States," or to "willfully obstruct the recruiting or enlistment service of the United States," and its language is broad enough to include statements calculated to produce these results, when made in the presence of persons who are not in the military or naval forces of the United States, provided they are willfully made and with the intent set out in the act. Whether the statements alleged to have been made constituted, under the circumstances, an attempt "to cause insubordination, disloyalty, mutiny or refusal of duty in the military or naval forces of the United States," or an obstruction of "the recruiting or enlistment service of the United States to the injury of the service or of the United States," were questions for the jury.

[7] It is also urged that the counts were insufficient, because it is not alleged that the utterances with which the defendant was charged "caused any injury to the military or naval service and to the United States."

In United States v. Krafft, 249 Fed. 919, 162 C. C. A. 117, L. R. A. 1918F, 402, in which a writ of certiorari to review the decision of the Circuit Court of Appeals for the Third Circuit was denied by the United States Supreme Court, without opinion (247 U. S. 520, 38 Sup. Ct. 582, 62 L. Ed. 1246), it was held that violation of this statute is not dependent upon any one actually being influenced by the language used, and "that all that need be shown is use of language which would be likely to cause mutiny, disloyalty, or insubordination, with intent so to do, and that both the speaking of the words and the intent of the speaker are for the jury."

We think that the allegations in the indictment were sufficient, and that they fully apprised the defendant of the nature of the offense with

which he was charged, and with sufficient definiteness so that, in case of conviction or acquittal he could thereafterwards plead the judgment in any other prosecution for the same offense.

[8] The court properly submitted the question of the likelihood of such utterances to produce insubordination, refusal of duty and causing an obstruction to the recruiting and enlistment service, and the intent with which they were made, to the jury with the following instructions:

"You must be satisfied, gentlemen, that the words are adapted to produce the effect alleged and were used with the intent to produce it. * * *

"It is not necessary that the United States shall prove an attempt to influence any particular person. It is enough for them to satisfy you that an attempt was made to cause persons who should thereafter, during the period of the war, become, by enlistment or by draft, members, as the statute says, in the military and naval forces, to refuse the duty imposed upon them, or to become insubordinate, disloyal, or mutinous."

With these instructions we fully agree, and they are in accord with the interpretation of the statute by other courts.

[9] During the trial the court admitted in evidence certain circulars containing advice not to register, and against conscription. These circulars were alleged to have been distributed by the plaintiff in error during the month of May, 1917. This was the contents of one handed by him to Thomas H. Gardiner:

"Friend of American Freedom:

"You are opposed to the conscription law. You do not want to see a military system forced upon the people of this country against their will. You do not want to be compelled to be a cog in a huge military machine. You do not want to see every young man in this country trained to the point where he has no will power of his own, but simply a tool to obey the orders of his so-called superior officers. The youth of America must not be used for cannon fodder.

"These are just a few of the conditions that will be imposed upon the people of this country. Can you imagine a democracy with conscription? This conscription law is just one more attempt of Wall Street to tighten its grip on the people. A strong military power now means despotism in the near future.

"You can do your share to stop this law from being put into effect if you will act now. This note to you is one of many thousands that are being sent out all over the country. You are one link in an endless chain, and we want you to work with us by following these suggestions.

"1st. Do not register; no matter what your age or physical condition. Registration is the first step toward conscription. You will not be alone in this; thousands are going to refuse. You will make one more in this huge protest against Prussianizing America.

"2d. Have copies of this circular written or printed and send them to every person you can think of.

"3d. Tell every person whom you can trust not to register.

"4th. Do it now as time is short; use the inclosed circulars where they will do the most good.

"Caution.—Do not sign your name to any communication you may send out on this matter, and remember that eternal vigilance is the price of liberty. Get busy."

The other circulars, inclosed in envelopes and sent to other parties through the mail, were of the same general tenor, and urged the persons to whom they were sent to "kill conscription by refusing to register." As these circulars were distributed before the enactment of the

Espionage Act of June 5, 1917, it is claimed that they were inadmissible. The court, however, correctly instructed the jury that they were received in evidence only for the purpose of showing the intent with which the defendant made the statements with which he was charged in the indictment under which he was being tried, and that, whether the defendant could be punished for distributing these circulars urging a violation of a law which had not yet been enacted was not a question before the jury and about which they "need not bother their heads." They were also told to consider that men change their minds, and that, "if there were previous to this period an intent, that there were many circumstances in this case referred to by counsel for the defendant which would have made it unlikely that he should then and there have spoken words with that intent." With this caution he submitted this evidence with the following instructions:

"It is for you to say, gentlemen, whether or not, in your opinion, they are sufficiently close in time and in connection with the meeting of January 13th to indicate any intent of that kind, or whether they aid you in any way in making up your mind as to the existence of the intent on that occasion."

It is also urged by counsel that these circulars were inadmissible for the further reason that the plaintiff in error had been indicted by a federal grand jury for the district of Rhode Island because of their distribution, and that said indictments were then pending against the plaintiff in error; but the circulars were competent to show the intent with which the utterances alleged in this indictment on which he was tried were uttered. They were admitted for this purpose only, and the rights of the defendant were carefully guarded by the instructions which were given in regard to them, and there was no error in their admission nor in that of prior statements in regard to conscription made by the defendant.

As the evidence has not been reported, we are unable to determine whether there was any variance between it and the "allegations in the indictment or not; but, if there was such a variance, as stated by the defendant in his motion for an acquittal, it was immaterial.

Since the submission of this case the Supreme Court has, in Schenck v. United States, 249 U. S. 47, 39 Sup. Ct. 247, 63 L. Ed. ——, decided on March 3, 1919, Debs v. United States, 249 U. S. 211, 39 Sup. Ct. 252, 63 L. Ed. ——; and Frohwerk v. United States, 249 U. S. 204, 39 Sup. Ct. 249, 63 L. Ed. ——, decided on March 10, 1919, given a like construction to the Espionage Act.

We regard those decisions as conclusive on the main questions in this case.

The judgment of the District Court is affirmed.