GOLDSTEIN v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit.  May 26, 1919.)

No. 3289.

1. ARMY AND NAVY ⬤=40—INTERFERENCE WTH ARMED FORCES OF UNITED STATES —OFFENSES.

The exhibition of a picture during the existence of the war with Germany, calculated to sow discord between the people of the United States and the British Empire by arousing feelings of indignation by portraying scenes in which British soldiers were depicted during the Revolutionary War as murdering noncombatant Americans, is a violation of Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c), making it an offense for any person when the United States is at war to willfully cause or attempt to cause insubordination, mutiny, or refusal of duty in the armed forces of the United States, for the depicting of such scenes might cause insubordination, etc., of armed forces operating in connection with the British.

2. ARMY AND NAVY ⬤=40—INTERFERENCE WITH ARMED FORCES OF UNITED STATES—OFFENSES.

An indictment, charging that defendant, by the exhibition of a moving picture calculated to cause feelings of indignation against England, vio-

lated Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c), making it an offense for any person to cause, or attempt to cause, insubordination, mutiny, or refusal of duty in the armed forces of the United States, *held* sufficient, in view of the fact that millions of men were being drafted, though it did not aver that soldiers witnessed the exhibition of the picture; it being alleged that the picture was publicly exhibited.

3. ARMY AND NAVY ☞40—ESPIONAGE ACT—INDICTMENT—SUFFICIENCY.

An indictment *held* to charge a violation of the Espionage Act, in that it alleged that defendant in aid of the German government had control of and was using a motion picture calculated to arouse feelings of enmity between the people of the United States and the British Empire, for the purpose of violating Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c), making it an offense for any person to cause or attempt to cause any insubordination or refusal of duty in the armed forces of the United States.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Robert Goldstein was convicted, under Act June 15, 1917, of knowingly, willfully, and unlawfully attempting to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States during war, and he brings error. Affirmed.

The plaintiff in error was convicted on two counts of an indictment, the first of which charged as follows: "That throughout the period of time from the 6th day of April, in the year of our Lord one thousand nine hundred and seventeen, to the day of the finding and presentation of this indictment, the United States has been at war with the Imperial German government, and that during said period of time one Robert Goldstein, whose full and true name other than as herein stated is to the grand jurors unknown, hereinafter called defendant, in the city of Los Angeles, state of California, and within the Southern Division of the Southern District of California and within the jurisdiction of this honorable court, did, on the 28th day of November, in the year of our Lord one thousand nine hundred and seventeen, knowingly, willfully and unlawfully attempt to cause insubordination, disloyalty, mutiny, and refusal of duty, in the military and naval forces of the United States in the manner following, that is to say:

"That at the time and place aforesaid, the said Robert Goldstein did present to the public at Clune's Auditorium Theater, a certain motion picture play, entitled and known as 'The Spirit of '76,' which said motion picture play was designed and intended to arouse antagonism, hatred, and enmity between the American people, and particularly the American military and naval forces, against the people of Great Britain, and particularly against the military and naval forces of Great Britain at a time when, as the defendant then and there well knew, the government of Great Britain with its military and naval forces was an ally of the United States in the prosecution of the war as aforesaid against the Imperial German government; that among the scenes so presented in said motion picture play, 'The Spirit of '76,' there was, at the time and place aforesaid, presented to the public in said picture the scene of a soldier of Great Britain whirling an American infant around on the point of his bayonet, and the scene of British soldiers in the act of shooting and bayoneting helpless and defenseless American women and children and dragging American women and children by their hair and capturing and carrying away young American girls, and many other scenes of like character, all of which were designed and intended and were being used for the purpose of causing insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States."

There was a demurrer to each count of the indictment for its failure to state an offense against the laws of the United States, and a motion to quash which specifically pointed out the absence of allegation showing the proximity

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of military or naval forces of the United States, or that they could be affected thereby. The demurrer and the motion were overruled.

Crittenden Thornton, of San Francisco, Cal., for plaintiff in error.

Robert O'Connor, U. S. Atty., and W. F. Palmer, Sp. Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The demurrer and the motion to quash raised the question whether or not either count of the indictment alleged an offense against the United States.

[1] We will first consider the count which charges an attempt to cause insubordination and disloyalty or refusal of duty. The statute, Act of June 15, 1917, is clear and simple in its language. Whoever, when the United States is at war, shall willfully cause, or attempt to cause, insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States, shall be punished as provided. The question of the truth or falseness of the thing done by the person who, when the state of war exists, attempts to cause disloyalty or any of the other conditions enumerated, is not the essence of the inquiry. Enacted as the statute was while the country was at war, the evident, underlying purpose of its language was to prevent any willful attempt to engender feelings of lack of fidelity to the United States among the military or naval forces or any attempt made with evil mind to cause any disobedience to lawful authority in the military or naval forces; and the statute should always be read in the light of the purpose of its enactment.

It is clear that an attempt to create disloyalty may be by showing a picture to the public, as well as by uttering speech or publishing a writing. The picture might be a truthful representation of an historical fact, and yet the nature of it, the circumstances surrounding the exhibition thereof, the time, the occasions when the public exhibitions are had, may well tend to show whether the picture would naturally, in the light of great events, be calculated to foment disloyalty or insubordination among the naval or military forces. In time of peace, a picture purporting to show incidents of a war fought more than a hundred years before, and exhibiting soldiers of a foreign country bayoneting helpless American women and children, might arouse but ordinary interest. But, if it has come about that a war is being fought by the United States and in the war the cause of the United States is allied with that of the foreign country whose soldiers are pictured as murdering American women and children, and if, at the time the United States is enforcing draft laws and raising a large army and navy to fight the common enemy of the two allied countries, it seems but reasonable to say that the exhibition of such a picture is calculated to arouse antagonisms and to raise hatred in the minds of some who see it against the ally of the United States, and as a probable effect to put obstruction in the way of the necessary co-operation between the allied countries against the enemy, and to undermine an undivided sentiment for the United States and to encourage disloyalty and refusal of duty or insubordination among the military and naval forces. Schenck v. United States, 249 U. S. 47, 39 Sup. Ct. 247, 63 L. Ed. 470.

[2] Nor, in an attempt of the character indicated, is it necessary that the picture exhibited should actually be seen by soldiers and sailors already enlisted. Millions of men within the provisions of the conscription act and subject to call were in the military and naval forces throughout the country and were part of the public. The exhibition to the public at a public place, if given with the evil intent described, is sufficient. In Coldwell v. United States, 256 Fed. 805, — C. C. A. —, the Court of Appeals for the First Circuit considered an objection to an indictment wherein it did not appear that the persons whom the defendant was alleged to have addressed were in the military or naval forces of the United States. The court said:

"The act makes it an offense to willfully 'attempt to cause insubordination, disloyalty, mutiny or refusal of duty in the military or naval forces of the United States,' or to 'willfully obstruct the recruiting or enlistment service of the United States,' and its language is broad enough to include statements calculated to produce these results, when made in the presence of persons who are not in the military or naval forces of the United States, provided they are willfully made and with the intent set out in the act."

[3] The second count also charges a violation of the Espionage Act, in that it specifically alleges that the defendant, in the aid of the German Government, had control of and was willfully using the film as a means to violate section 3 of title 1 of the Act of June 15, 1917, c. 30, 40 Stat. 219 (Comp. St. 1918, § 10212c), the Espionage Act, in the manner as fully described in the first count of the indictment. The first count is referred to and drawn into the body of the second count by reference to the motion picture play "The Spirit of '76," and it is charged that it was designed and intended for use and was used as the means of violating section 3 of title 1, Act of June 15, 1917, c. 30, and title 11, § 22 (Comp. St. 1918, §§ 10212c, 10212i). When considered with the first count incorporated within it, we think the second count is sufficient.

We believe that the issues under the counts were properly for the jury, and, as the evidence upon which the verdict was predicated is not in the record, we must accept the verdict as sustained by the evidence.

The judgment is affirmed.