# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### HOWENSTINE et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 2, 1920. Rehearing Denied April 5, 1920.)

### No. 3302.

1. INDICTMENT AND INFORMATION ☜91(1)—NO NECESSITY OF CHARGING WILL-FULNESS UNLESS AN ELEMENT OF OFFENSE.

It is the general rule that it is not necessary to charge that the offense was committed willfully, unless the statute defining the same makes willfulness an element thereof.

2. INDICTMENT AND INFORMATION ☜91(3)—"FELONIOUSLY" AND "UNLAWFUL-LY" EQUIVALENT TO "WILLFULLY."

Words which import an exercise of the will, such as "feloniously" and "unlawfully," will supply the place of the word "willfully" in an indictment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Feloniously; Unlawfully; Willful.]

3. INDICTMENT AND INFORMATION ☜91(3)—NOT NECESSARY TO USE WORD "WILL-FUL."

Where the facts alleged necessarily import willfulness, the failure to use the word is not fatal to the indictment.

4. ARMY AND NAVY ☜40—WHAT CONSTITUTES ATTEMPTING TO INCITE DISLOY-ALTY IN "MILITARY SERVICE" STATED.

To constitute the offense of attempting to incite disloyalty and refusal of duty in the military service, within Espionage Act, tit. 1, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), it is not necessary that the persons against whom defendants' activities were directed should have been mustered into the military service, but it is sufficient if they were within the provisions of the Conscription Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), or were or might be subject to military service.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Military Service.]

---

5. CONSPIRACY ⬅️43 (5)—UNNECESSARY TO ALLEGE HOW OVERT ACTS WOULD AFFECT OBJECT OF CONSPIRACY.

In an indictment for conspiracy, it is not necessary to allege the manner in which the overt acts charged would tend to effect the object of the conspiracy; the purpose of such allegations being to show that something was done with intent to carry the conspiracy into effect.

6. ARMY AND NAVY ⬅️40—OTHER SEDITIOUS STATEMENTS ADMISSIBLE TO SHOW INTENT.

In a prosecution for attempt to incite disloyalty and refusal of duty in the military service, evidence of statements made by defendant before the entrance of the United States into the war *held* admissible as tending to show the then state of mind and feeling of defendant.

7. CRIMINAL LAW ⬅️429 (1)—OFFICIAL RECORD OF DRAFT EXAMINATION ADMISSIBLE IN PROSECUTION FOR INCITING REFUSAL OF MILITARY DUTY.

The official record of examinations of a draftee, as showing prima facie the grounds on which he was rejected, *held* admissible on a trial for attempting to incite refusal of duty in the military service by so treating the eyes of said draftee and others as to cause defective vision and consequent rejection.

8. CRIMINAL LAW ⬅️413 (1)—DEFENDANTS' LOYAL STATEMENTS INADMISSIBLE IN PROSECUTION FOR INCITING DISLOYALTY.

In a prosecution for attempting to incite disloyalty and refusal of duty in the military service, evidence of the expression of loyal sentiments by defendants *held* properly excluded.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Benjamin Bledsoe, Judge.

Criminal prosecution by the United States against Frank P. Howenstine and Idell Kennedy. Judgment of conviction, and defendants bring error. Affirmed.

The plaintiffs in error were indicted for violation of the provisions of the Espionage Act (Act June 15, 1917, c. 30, 40 Stat. 217). The indictment contained three counts. Howenstine was found guilty as charged in the second count. Kennedy was found guilty as charged in the first and second counts. Le Roy, who was indicted with them, was found not guilty on all the counts.

The indictment, in brief, charged in the first count that the defendants unlawfully and feloniously conspired, combined, confederated, and agreed together to commit the offense of unlawfully, feloniously, and willfully causing and attempting to cause insubordination, disloyalty, and refusal of duty in the military and naval forces of the United States when the United States was at war, through and by means of soliciting persons too numerous to mention, who were subject to and might be subject to service in the military and naval forces of the United States, to go to an oculist and optician and be fitted with eyeglasses that would so impair their vision and physical condition that they would thereby be rejected and discharged from service in said military and naval forces, and by also advising said persons that the President of the United States was an Englishman, and that he and the United States were fighting England's battles, which said solicitation and advice were designed and intended to cause and to attempt to cause insubordination, disloyalty, and refusal of duty in the said military and naval forces, and failure and refusal on the part of said available persons to enlist therein when the United States was at war, and another offense against the United States, to wit, the offense of unlawfully, feloniously, and willfully, by and through the means last aforesaid, of obstructing the recruiting and enlistment service of the United States when the United States was at war, to the injury of the service of the United States.

One overt act charged under the first count was that the defendant Kennedy, on or about November 5, 1917, advised one John S. Pullen that the President

of the United States was an Englishman, that he and the military and naval forces of the United States were fighting England's battles, and that the United States was fighting for an unjust cause; said Pullen being then and there, as the defendant well knew, duly registered under the Act of May 18, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), and not in any wise exempt therefrom. Another overt act alleged was that on or about November 12, 1917, the defendant Kennedy solicited John S. Pullen to present himself, when drafted, to the defendant Howenstine, for the purpose of having the latter fit eyeglasses to Pullen's eyes, so as to impair his vision and physical condition, so that he would thereby be rejected and discharged from service in the military establishment of the United States; he being then and there, as the defendant Kennedy well knew, duly registered under the Act of Congress of May 18, 1917, and not exempt in any wise from service. The third overt act was that the defendant Kennedy, on or about December 29, 1917, made statements to George F. Simpson similar to those which she had made to Pullen; said Simpson being then and there, as said defendant well knew, duly registered under the Act of Congress of May 18, 1917, and not exempt, etc. The fourth overt act was that on or about December 29, 1917, the defendant Kennedy solicited Simpson to present himself to the defendant Howenstine for the same purpose and under the same circumstances as are charged in regard to Pullen. The fifth overt act was that on or about November 2, 1917, the defendant Howenstine fitted to the eyes of Joseph Le Roy a pair of glasses for the purpose of so impairing his vision and physical condition that he would thereby be discharged and rejected from the military establishment of the United States by the examining physician and surgeon thereof at Camp Lewis, state of Washington; Le Roy being then and there, as Howenstine well knew, duly registered under the Act of May 18, 1917, and the proclamation of the President pursuant thereto, and not in any wise by law exempt from service.

The second count of the indictment charged that the defendants did on or about November 2, 1917, knowingly, willfully, and unlawfully cause and attempt to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States when the United States was at war, in that they did fit, obtain, sell, supply, and furnish to the said Le Roy a pair of eyeglasses for the purpose of so impairing his vision and physical condition that he would thereby be rejected and discharged from the military establishment of the United States by the examining physician and surgeon of said establishment at Camp Lewis, state of Washington, which said fitting, obtaining, selling, supplying, and furnishing said eyeglasses was designed and intended to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States when the United States was at war; said Le Roy being then and there, as said defendants well knew, duly registered under the Act of May 18, 1917, and the proclamation of the President, and not in any wise by law exempt from military service.

A. I. McCormick, G. C. De Garmo, and Davis & Rush, all of Los Angeles, Cal., for plaintiff in error Kennedy.

Frank Dominguez, W. H. Dehm, and Paul W. Schenck, all of Los Angeles, Cal., for plaintiff in error Howenstine.

Robert O'Connor, U. S. Atty., and W. Fleet Palmer and Gordon Lawson, Asst. U. S. Atty., all of Los Angeles, Cal.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above).  [1-3] Demurrers were interposed to the indictment, and error is assigned to the orders of the court overruling the same. It is contended that the first count is fatally defective for the reason that the conspiracy and the overt acts set forth are not alleged to have been willful. To this

it is sufficient to say that the definition of the offense of conspiracy under which the defendants were indicted does not contain the word "willful," or any provision to indicate that it was the intention of Congress to make willfulness an ingredient of the offense. The indictment in the first count does, however, charge that the conspiracy was entered into unlawfully and feloniously, and each of the overt acts is alleged to have been done in pursuance of said unlawful and felonious conspiracy, and it is charged that the conspiracy was to commit the offense of unlawfully, feloniously and willfully causing and attempting to cause insubordination, etc. It is the general rule that it is not necessary to charge that the offense was done willfully, unless the statute defining the same makes willfulness an element thereof; and it is also generally held that words which import an exercise of the will, such as "feloniously" and "unlawfully," will supply the place of the word "willfully." Flint v. Com., 81 Ky. 186, 23 S. W. 346; Aikman v. Com., 18 S. W. 937, 13 Ky. Law Rep. 894; State v. Robbins, 66 Me. 324; Harding v. State, 94 Ark. 65, 126 S. W. 90; Halley v. State, 108 Ark. 224, 158 S. W. 121. And this court has held that, where the facts alleged necessarily import willfulness, the failure to use the word is not fatal to the indictment. Van Gesner v. United States, 153 Fed. 46, 82 C. C. A. 180; Holsman v. United States, 248 Fed. 193, 160 C. C. A. 271.

[4] The contention is made that the acts charged in the indictment as means for carrying out the conspiracy were directed wholly to persons who were not in the service of the United States, and that therefore such acts could not tend to create insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States. But it was not necessary that the persons against whom the defendant's activities were directed should have been mustered into the military service of the United States. It is sufficient if they were within the provisions of the Conscription Act and subject to call. Goldstein v. United States, 258 Fed. 908, —— C. C. A. ——; Coldwell v. United States, 256 Fed. 805, —— C. C. A. ——.

We find no merit in the contention that the first count is defective for failure to charge that the defendants conspired to commit any specific acts. The count charges in clear terms a conspiracy to cause insubordination, disloyalty, and refusal of duty in the military and naval forces of the United States, "and this through and by means of soliciting persons," etc. The gist of the offense was the conspiracy, and it was not necessary to specify the means by which it was intended to accomplish the result. A conspiracy may be criminal, even if no means were agreed upon specifically. Frohwerk v. United States, 249 U. S. 204, 39 Sup. Ct. 249, 63 L. Ed. 561.

Nor do we find the first count defective in its charge of conspiracy to obstruct the recruiting and enlistment service of the United States, to the injury of that service. It is objected that there is no allegation that the persons to whom disloyal statements were made as charged were registered, or of age to require registration, or of an age to qualify them to enlist. But the indictment charges that they were persons "who were subject to and might be subject to" service in the military and naval forces of the United States, and that is sufficient. Rhuberg

v. United States, 255 Fed. 865, 167 C. C. A. 185; Schenck v. United States, 249 U. S. 47, 39 Sup. Ct. 247, 63 L. Ed. 470.

Some of the foregoing considerations apply also to the grounds of demurrer to the second count. It is said that that count is defective for its failure to charge that the defendants performed or attempted to perform any acts "to the injury of the service of the United States." It was not necessary that it should contain that allegation. The charge is that they caused and attempted to cause insubordination, disloyalty, etc., in the military and naval forces when the United States was at war. In so charging it followed the language of the statute, which was sufficient. The manner in which they committed the offense is set forth, and the act charged, which is that they did in fact give to a man registered under the Act of May 18, 1917, a pair of eyeglasses to be used to impair his vision, so that he would be rejected from service, was an act which unquestionably would tend to cause disloyalty on his part and refusal of military duty.

[5] It is objected that the overt acts charged are not sufficient to render criminal the alleged conspiracy to obstruct the recruiting and enlistment service. But such is not the office of the overt act, when pleaded in a conspiracy indictment. Its purpose is to show that the scheme of the criminal conspiracy was not abandoned, but that something was done to carry it into effect; and it was unnecessary to allege the manner in which the overt acts would tend to effect the object of the conspiracy. Houston v. United States, 217 Fed. 852, 133 C. C. A. 562; Gruher v. United States, 255 Fed. 474, 166 C. C. A. 550; De Lacey v. United States, 249 Fed. 625, 161 C. C. A. 535, L. R. A. 1918E, 1011.

North, a witness for the government, who was in the service of the United States, had testified that he and another government witness, a special agent of the Department of Justice, had approached the defendant Kennedy, informed her that they were liable to military service, and solicited her to aid them to evade such service, and that in response thereto she had taken them to the office of Howenstine, where they were fitted with eyeglasses. On cross-examination North was asked if he went to Mrs. Kennedy for the purpose of evading the draft. It was contended that the question was competent under the rule of this court in the case of Woo Wai v. United States, 223 Fed. 412, 137 C. C. A. 604. The court observed that the doctrine of that case was not involved, and an exception was taken to that statement. The witness, however, answered the question in the negative. We are unable to see how error can be predicated on the remark of the judge that the doctrine of the Woo Wai case was not involved. It clearly was not involved. It was entirely proper for witnesses in the employment of the government to approach the defendants to obtain further evidence of the unlawful scheme in which they were believed to be engaged. If counsel for the defense desired further information as to the relation of the witnesses to the offense charged, they were not precluded from presenting proper questions to elicit it.

[6] It is contended that it was error to admit in evidence an article published in a newspaper on November 22, 1914, which purported to

be an interview with the defendant Kennedy. It was objected first that no proper foundation had been laid for the admission of the article. It was shown, however, that she stated to one witness that she wrote the article, and another witness testified that the said defendant gave her a newspaper containing the article, and spoke of the article as one that she had written, and said that what was reported in the paper was what then occurred. That evidence was sufficient to show that the article was the expression of the defendant's views. It does not follow, from the fact that the article appears in the form of an interview, that she did not write and prepare it exactly as it was published.

It is objected, also, that such evidence was too remote. The printed interview was admitted for the purpose of showing the state of mind and feeling of the defendant at the time, and we think it was admissible for that purpose. United States v. Schulze (D. C.) 253 Fed. 377; Herman v. United States, 257 Fed. 601, —— C. C. A. ——; Shidler v. United States, 257 Fed. 620, —— C. C. A. ——; Coldwell v. United States, 256 Fed. 805, —— C. C. A. ——. In any view of the admissibility of this evidence, it is clear that it could not have injuriously affected the defendant Kennedy. The evidence of her attitude of mind and her advocacy of the German cause is so clearly established by other testimony that the printed interview could add nothing to it.

[7] Error is assigned to the admission in evidence of the official report of the physical examination of the defendant Le Roy at Hollywood and at Camp Lewis, as shown by the records on file with the local board at Hollywood. The record was introduced by a member of the local board which had jurisdiction of Le Roy, and it was taken from its files. It is on a form prepared by the Surgeon General of the Army. The first part is a statement signed by Le Roy as to his health, in which he claimed he was disqualified by reason of hernia. It was shown that he signed it. The second part records the result of the physical examination of Le Roy before the local board, as attested by the examining physician. The first part was sent to Camp Lewis, where further examination was had, and it is to the record of that examination that the objection is particularly directed. A member of the local board testified that the exhibit showing the examination at Camp Lewis was the regular form used there, and that it was returned by mail from Camp Lewis to the local board, to be acted upon by the latter in making up its quota.

The court below took judicial notice that Maj. Gen. Greene was the commanding officer at Camp Lewis, and admitted the exhibit in evidence solely for the purpose of showing the fact of Le Roy's rejection from the military forces of the United States, and the cause of such rejection as announced, and ruled that it was not admissible for the purpose of showing the truth of the cause of rejection. There was testimony that Le Roy, after returning from Camp Lewis, stated that he had been rejected on account of his eyesight, and that when his attention was directed to the difference between the result of the examination of his eyes before the local board and the examination at Camp Lewis, he explained that the local board had passed him hastily and without careful examination, and on the trial he admitted that the

physician who examined him at Camp Lewis had said: "You don't see as well here as you did at Hollywood." The court admitted the document on the ground that it was a public record. It was undisputed that Le Roy when examined by the local board was accepted, and when examined at Camp Lewis was rejected. The record was public and official, and we think it was not reversible error to admit it for the purpose specified in the ruling of the court. Prima facie it showed the ground on which Le Roy was rejected. It did not preclude the defendants from showing that the cause was otherwise than as there stated, or that Le Roy's eyesight was not in fact defective. That there was in fact any other cause of his final rejection was not suggested by the defense.

Error is assigned to the ruling of the court in sustaining an objection to a question propounded as to the mental condition of the defendant Kennedy; she having interposed the defense of insanity. The question was whether there had ever been times when, in the judgment of the witness, basing it upon the defendant's action, as much as upon her words, the witness was of the opinion that she did not comprehend what she was talking about. Such testimony was not competent to sustain the defense of insanity. But it appears from the record that the witness did answer the question, and said that the defendant at times was irrational, and that at times she did not seem to know right from wrong, and seemed very childish, and was lacking in judgment.

[8] It is contended that it was error to refuse to allow the defendants to prove specific statements and conduct prior to and during the war, evidencing their opposition to Germany and the German cause and their patriotism toward the United States, and that the rule applicable here is that which obtains in treason and sedition cases, where prior utterances of the accused are admitted as evidence of his loyal intent. But the gist of the offense of which the defendants here were accused is not treason or sedition. It is the performance of specific acts which tend to obstruct the government in its purpose to raise and equip an army and conduct a war, and we think that the ordinary rule applies that one who commits such prohibited acts can create for himself no defense by uttering sentiments which are at variance with the acts which he performs. United States v. Krafft, 249 Fed. 919, 162 C. C. A. 117, L. R. A. 1918F, 402. The defendants here were not denied the opportunity to introduce character witnesses and to prove their general reputation for patriotism.

It is contended that the court erroneously admitted in rebuttal evidence to impeach the testimony of the defendant Howenstine. The government had shown in its testimony in chief certain disloyal statements of Howenstine, and he, testifying on his own behalf, denied that he had ever made such statements. A witness was called in rebuttal, who testified that Howenstine admitted to him that he might have foolishly made such statements. The evidence was clearly admissible in rebuttal.

There are assignments of error to the charge of the court as given, and to the refusal of the court to give certain requested instructions. It would serve no useful purpose to discuss them in detail. We have

carefully examined the record, and we find that the court fairly and properly instructed the jury on all the questions involved, and committed no error in rejecting instructions which were requested and refused.

The judgment is affirmed.