## UNITED STATES v. SCHULZE.

### (District Court, S. D. California, S. D. October 11, 1918.)

### No. 1495.

1. CRIMINAL LAW ⬸371(1)—EVIDENCE—INTENT.
   Where the question of the intent and meaning of a defendant in using certain language is in issue, as in a prosecution for uttering pro-German sentiments, contrary to the Espionage Act, evidence that he used similar language on other occasions is admissible to show his mental attitude, but not as evidence of the fact that he used the language charged.

2. WAR ⬸4—ESPIONAGE ACT—"SUPPORT OR FAVOR."
   Under the provision of Espionage Act June 15, 1917, § 3, as amended by Act May 16, 1918, § 1, that "whoever shall by word or act support or favor the cause of any country with which the United States is at war * * *" shall be guilty of an offense, although not so stated in terms, intent is an essential element of the offense, as the words "support or favor" import willfulness and intent.

3. WORDS AND PHRASES—"SUPPORT."
   "Support" means to vindicate, to maintain, to defend, to uphold with aid or countenance, and should be construed in practically the same sense as "favor."
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Support.]

4. WORDS AND PHRASES—"FAVOR."
   "Favor" means to regard with favor, to aid or to have the disposition to aid, to show partiality or unfair bias towards, and should be construed in practically the same sense as "support."
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Favor.]

Criminal prosecution by the United States against Charles G. Schulze. On motion for new trial. Denied.

Robert O'Connor, U. S. Atty., and Lyle W. Rucker, Asst. U. S. Atty., both of Los Angeles, Cal.

A. J. Morganstern, of San Diego, Cal., for defendant.

TRIPPET, District Judge. At the time of the ruling on the motion for a new trial I promised the attorneys to file a written opinion, and this is in compliance with that promise. The defendant was convicted under an indictment charging him with violation of that part of section 3 of what is known as the Espionage Act (Act June 15, 1917, c. 30, 40 Stat. 217, as amended by Act May 16, 1918, c. 75, § 1) which reads as follows:

"Whoever shall by word or act support or favor the cause of any country with which the United States is at war, or by word or act oppose the cause of the United States therein, shall be," etc.

The language of the statute does not read, Whoever with intent to favor the cause of Germany uses certain words; but the statute is, Whoever by word favors the cause of Germany. The statute does not by its terms require that the words should be knowingly and willfully spoken.

⬸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The defendant moves for a new trial on the ground that the court admitted evidence that the defendant uttered pro-German sentiments on various occasions during the time from 1915 to the time the indictment was returned, over the defendant's objection. These statements of the defendant were admitted under the rule of evidence thus stated by Mr. Stephen:

"When there is a question whether a person said or did something, the fact that he said or did something of the same sort on a different occasion may be proved, if it shows the existence on the occasion in question of any intention, knowledge, good or bad faith, malice, or other state of mind, or of any state of body or bodily feeling, the existence of which is in issue, or is or is deemed to be relevant to the issue; but such acts or words may not be proved merely in order to show that the person so acting or speaking was likely on the occasion in question to act in a similar manner." Article 11, Stephen's Digest of the Law of Evidence.

There is no question here as to whether such evidence was admissible for the purpose of proving that the defendant said the things which the indictment charges he said. The court limited the effect of the evidence on the ruling admitting the evidence, and also in the instructions to the jury, to the purpose set forth in the above quotation from Stephen.

[2] The defendant argues that the government was not required to prove intent; that the mere utterance of the words constitutes the crime, and therefore this evidence was improperly admitted for the purpose of showing intent. (The word "intent" herein is used in the sense of malice, design, plan, purpose, and attitude of mind of the defendant.) The defendant argues that, where a statute denounces a certain thing as a crime, without specifying that the doing of the thing shall be done with a certain intent, then it is not necessary for the government to prove intent. The defendant's attorney illustrates his position by this:

If a defendant commits rape, prior acts cannot be introduced, because the crime is complete by committing the act, and the necessary intent is presumed; while, if the defendant commits assault with intent to commit rape, then prior acts may be proved to show the intent. In the section of the statute under consideration, nearly all the crimes denounced by this section specify that intent shall be a part of the crime. The word "intent" is used five times in this section, and the word "willfully" nine times. When the statute comes to prohibiting the use of words favoring the cause of Germany, it does not use the word "intent" nor the word "willfully."

The defendant says that the mere uttering of the words constitutes the offense. If that be true, then the witnesses who testified committed the crime denounced in the statute, because these witnesses on several occasions repeated the words of the defendant. Shall they be put to their purgation? If the mere uttering of these words by these witnesses made a prima facie case against them, then how can they defend themselves? Is the answer that they would defend themselves by proving that they did not intend to commit the crime, or that they were justified by reason of the fact that they were repeating this matter for the purposes of informing the authorities, or because they were compelled to? If so, why is that a

defense? Can a person commit rape, and defend on the ground that he was repeating an act that some one else had done? If the spoken words per se constitute the offense, then these witnesses could not defend by showing want of intent, any more than the defendant could defend by showing want of intent, when charged with rape. If these witnesses could defend by showing want of intent, it illustrates the necessity of reading into this statute the necessity of proving intent.

Intent is a necessary element of this offense, notwithstanding the absence of the words "willfully" and "intent." Words spoken in one set of circumstances may mean an entirely different thing from words spoken in another set of circumstances. If the American army are advancing and the Huns are retreating, and I say, "We cannot always hope to win," that is pessimistic. If the Huns are advancing, and the Americans are retreating, and I say, "We cannot always hope to win," that is optimistic. In order for the government to prove the crime, the government must give color to the words. One cannot look at these words uttered by the defendant, and say that they necessarily favor the cause of Germany. Some of the sentences would not convey that meaning at all, without intent being shown.

The government has charged that the defendant made the statements to support and favor the cause of Germany. The government was entitled to prove all the words uttered, and entitled to prove that each and every one of those words uttered were spoken to favor the cause of Germany. It might well be that the government would not be able to prove the entire charge, but might be only able to prove a part of the things uttered. Now, if that part proved, standing alone, unaided by the attitude of mind or the purpose of the defendant, would not show that the defendant uttered the words to favor the cause of Germany, then the government would have failed. The government did not know and could not tell which of these statements the jury would conclude that the defendant had said.

The government must negative in its proof the possibility of the words having been uttered without intending to support the cause of Germany, or opposing the cause of the United States. For example, the court uttered every word set out in the indictment at various times during the trial, in discussing this question. Then did the court commit a crime by uttering these words? The purpose of the defendant must be made manifest, and this can only be done by showing the circumstances and by proving the attitude of mind of the defendant.

[3, 4] The words "support or favor" import willfulness and intent. The common understanding of the meaning of these words is this: Support means to vindicate; to maintain; to defend; to uphold by aid or countenance. Favor means to regard with favor; to aid or to have the disposition to aid; to show partiality or unfair bias towards. These words should be construed in practically the same sense, "ejusdem generis." All the dictionaries give a definition of favor as a disposition to aid. This makes the attitude of mind or intent

an issue. Both words require action and purpose. One could not have the disposition to aid or show unfair bias towards, without intending to do so. To use the words willful and intent in the sentence defining this crime would be tautology.

The statute must have a sensible interpretation. To go no deeper than the words of the statute would be to stick in the bark. "For the letter killeth, but the spirit giveth life." Are we not justified in quoting Hamlet: "There is nothing either good or bad but thinking makes it so." The Supreme Court says:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter. The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law, which enacted 'that whoever drew blood in the streets should be punished with the utmost severity,' did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling, cited by Plowden, that the statute of 1 Edward II, which enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who breaks out when the prison is on fire, 'for he is not to be hanged because he would not stay to be burnt.' And we think that a like common sense will sanction the ruling we make, that the act of Congress which punishes the obstruction or retarding of the passage of the mail, or of its carrier, does not apply to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder." United States v. Kirby, 74 U. S. (7 Wall.) 482, 486 (19 L. Ed. 278).

### The Constitution provides:

"Treason against the United States shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort. * * *" Article 3, § 3.

It will be seen from this quotation that neither the word "willful" nor "intent" is used in the Constitution in defining treason. Intent is an indispensable element in the establishment of treason, and prior acts have always been admitted for the purposes of showing intent. Fries Case, 3 Dall. 515, 1 L. Ed. 701, Fed. Cas. No. 5,126; U. S. v. Burr, Burr's Trial, 1 Robertson, 472, Fed. Cas. No. 14,694; Respublica v. Weidle, 2 Dall. 88, 1 L. Ed. 301; United States v. Pryor, 3 Wash. C. C. 234, Fed. Cas. No. 16,096; Regina v. Deasy, 15 Cox's Crim. Cases (Eng.) 334; Regina v. Frost, 9 Car. & P. (Eng.) 129, 38 Eng. Com. Law, 70; Regina v. O'Brien, 7 State Trials (N. S.) 1, 75.

In the case of Fries, supra, the court said:

"However indisputably requisite it may be to prove by two witnesses the overt act for which the prisoner at the bar stands indicted, yet evidence may be given of other circumstances, or even of other overt acts, connected with that on which the indictment is grounded, and occurring or committed in any other part of the district than the place mentioned. Although the prisoner be not on his trial, nor is he now punishable, for any other than the overt act laid, other overt acts and other circumstances, parts of the general design, may nevertheless be proved, to show the quo animo—the intent—with which the act laid was committed." U. S. v. Fries, Wharton's State Trials, 82, 585, 594.

The court further said in the Fries Case:

"The intent is the gist of the inquiry in a charge of treason, and is the great and leading object in trials for this crime. The description of crimes contained in the act commonly called the Sedition Act [1 Stat. 596] lose their character, and become but component parts of the greater crime, or evidences of treason, when the treasonable intent and overt act are proved." Fries Case, 3 Dall. 515, 1 L. Ed. 701, Fed. Cas. No. 5,126.

In the trial of Burr, acts of treason elsewhere than as charged were held admissible, since they, "by showing a general evil intention, render it more probable that the intention in the particular case was evil." See 1 Wigmore on Evidence, § 367, note.

"In sedition (including seditious riot and seditious libel), other acts and utterances are receivable, under the present principles, to evidence seditious intent." 1 Wigmore on Evidence, § 367, p. 445.

See Respublica v. Weidle, 2 Dall. 88, 1 L. Ed. 301; R. v. Hunt, 1 State Trials (N. S.) 171; Regina v. O'Brien, 7 State Trials (N. S.) 1, 75.

My brother, Judge BLEDSOE, sat in the first trial of this case and the same evidence was admitted. Judge BLEDSOE advises me that, after a further consideration of the matter, he is clearly of the opinion that the evidence was properly admitted in the case.

Motion for a new trial will be denied.