SHIDLER v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.  May 5, 1919.)

No. 3272.

1. WAR &4—ESPIONAGE ACT—OFFENSES.

Espionage Act June 15, 1917, § 3 (Comp. St. 1918, § 10212c), *held* to denounce three offenses: First, the willful making or conveying of false reports while the United States is at war, with the intent to interfere with the operation or success of military and naval forces, etc.; second, the attempt to cause insubordination, disloyalty, or mutiny in the military and naval forces of the United States; and, third, the willful obstruction of the enlistment service of the United States, to the injury of the service or the United States—it being unnecessary to the consummation of the first two offenses that the United States be injured.

2. ARMY AND NAVY &40—ESPIONAGE ACT.

Assuming that defendant might be loyal, though he characterized the Draft Act as unjust, and stated that he would fight conscription, yet, if he made the statement with evil mind, intending to bring about insubordination, disloyalty, and refusal of duty in the military service, he was guilty of a violation of Espionage Act June 15, 1917, § 3 (Comp. St. 1918, § 10212c), and in a prosecution based on such statement, defendant's acts, speech, and state of mind are matters for consideration in determining whether he was guilty.

3. WAR &4—ESPIONAGE ACT—EVIDENCE.

In a prosecution under the Espionage Act June 15, 1917, § 3 (Comp. St. 1918, § 10212c), for the making of false statements to the effect that the war was nothing but a capitalists' war, etc., with intent to promote the success of Germany, with which the United States was at war, a copy of the address of the President of the United States to. Congress, made a few days before that body declared war, setting forth the causes for the declaration of war, *held* admissible in evidence.

4. CRIMINAL LAW &371(1)—EVIDENCE—OTHER OFFENSES—STATE OF MIND—ESPIONAGE ACT.

In a prosecution under Espionage Act June 15, 1917, § 3 (Comp. St. 1918, § 10212c), for making false statements with the intention of promoting the success of Germany, with which the United States was at war, evidence of statements made by defendant prior to the declaration of war was admissible, where limited to the question of the defendant's state of mind at the time he uttered the statements charged.

5. ARMY AND NAVY &40—ESPIONAGE ACT—OFFENSE.

The mere utterance of seditious words in the presence of a person subject to military duty under the Selective Service Law (Comp. St. 1918, §§ 2044a–2044k), if intended to induce insubordination, disloyalty, or refusal of duty, is sufficient to constitute an offense under Espionage Act June 15, 1917, § 3 (Comp. St. 1918, § 10212c); so in a prosecution under such section, based on such utterances, an instruction that to constitute an attempt to commit a crime there must be specific intent to commit it, followed by an overt act, was confusing and properly refused.

6. CRIMINAL LAW &829(3)—REQUEST COVERED BY INSTRUCTIONS GIVEN.

In a prosecution for violation of Espionage Act June 15, 1917, § 3 (Comp. St. 1918, § 10212c), where the court instructed that it was necessary for

the government to prove that, while the United States was engaged in war, defendant made false statements with intent to promote the success of the enemy, the refusal of a requested instruction that, unless the jury was satisfied the words spoken were of the character, and of adequate and sufficient magnitude and proximity to the thing intended, to bear out the intent charged, defendant should be acquitted, was properly refused, being covered.

7. CRIMINAL LAW ☞262—ARRAIGNMENT—WAIVER.

In view of U. S. Comp. St. § 1698, defendant waived arraignment where, after the indictment was read to the jury, the clerk stated defendant had entered a plea of not guilty, and defendant proceeded to trial without objection, the date of which had been fixed by stipulation.

In Error to the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

Al Shidler was convicted of violation of Espionage Act June 15, 1917, § 3 (Comp. St. 1918, § 10212c), and brings error. Affirmed.

M. J. Scanlan and James Glynn, both of Reno, Nev., for plaintiff in error.

William Woodburn, U. S. Atty., of Reno, Nev., for the United States.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Shidler was convicted under four counts of an indictment drawn under section 3 of the Espionage Act of June 15, 1917, c. 30, 40 Stat. 218 (Comp. St. 1918, § 10212c). The first count alleged in substance that he willfully and unlawfully made certain false statements with intent to promote the success of the Imperial German government, the enemy of the United States, by stating in substance before certain named individuals "that the war between the United States and the Imperial German government was nothing but a capitalistic war, and if it was not for the graft and money to be made by the capitalists the United States would never have gone into war"; that the statements made were then and there false, as the defendant then and there well knew. The second count charged that defendant willfully and unlawfully made certain false statements with the intent to promote the success of Germany, and that in the presence of certain persons named he said, in substance, "that the war between Germany and the United States was started solely for the interest of the capitalists, who would reap a harvest and make immense profits from the sale of munitions and war material"; that these statements were false, and known by the defendant to be false. The third count alleged that, during the war between the United States and Germany, defendant willfully made certain false statements with the intent then and there to promote the success of Germany, in that, in the presence of an individual named, he said, in substance, as follows: "That the said war between the United States and the Imperial German government was started in the United States by the money power and grafters; that the government of the United States is controlled by Wall Street steel, iron, munitions factories, and shipbuilding interests; that the only reason that the war was being prolonged was for the

purpose of enriching the munition and supply corporations, Wall street, senators, congressmen, and other grafters, all of which were influencing the government to continue the war between the United States and the Imperial German government;" that the statements were false and defendant knew them to be false. In the fourth count it is alleged that defendant willfully, unlawfully, and feloniously did attempt to cause insubordination, disloyalty, and refusal of duty in the military forces of the United States, in that in the presence of certain persons, he said, in substance, as follows: "The draft law is the rottenest piece of injustice that was ever railroaded upon the American people; I will fight conscription as long as I have breath left in my body;" that said persons in whose presence these remarks were made were then and there male citizens of the United States between the ages of 21 and 30 years, and who had registered under the Draft Act of Congress approved May 18, 1917, entitled "An act to authorize the President to increase temporarily the military establishment of the United States." Act May 18, 1917, c. 15, 40 Stat. 76 (Comp. St. 1918, §§ 2044a–2044k).

The plaintiff in error contends that: (1) It is not charged that the statements alleged were made to the injury of the United States, nor that any of the statements alleged resulted in the injury to the recruiting or enlistment service of the United States or to the United States; (2) that it does not appear from the alleged false statements of the defendant alleged in the first count of the indictment that any of such statements were or are calculated to, or were capable of being construed as in any way made to promote the success of the German government; (3) that it does not appear from the alleged false statements in the second and third counts that they were calculated or intended to promote in any manner the success of the German government; (4) that in the fourth count no fact or overt act constituting an attempt is set forth.

[1] It is accepted by counsel on both sides that three separate offenses are created by section 3 of the statute and plaintiff in error argues that the phrase "to the injury of the service of the United States" relates back to and is an essential element of all three, and must be alleged and proved. The section, as we understand it, defines these offenses: First, whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States, or to promote the success of its enemies; second, whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval service of the United States; third, whoever shall willfully obstruct the recruiting or enlistment service of the United States, to the injury of the service or the United States. The clause "to the injury of the service or of the United States" qualifies only its immediate antecedent; that is, the third subdivision of the section, which reads, "or shall willfully obstruct the recruiting or enlistment service of the United States." This would be the general rule of construction, which may be well invoked in this instance, when it is also

considered that the acts denounced and made criminal in the first two subdivisions, if consummated, obviously do injure the United States, while it would not necessarily follow that the acts done under the third subdivision would produce such results. The Hoquiam, 253 Fed. 627, —— C. C. A. ——. As pointed out by Judge Ray in United States v. Pierce (D. C.) 245 Fed. 878, the earnest urgings by a mother to her son not to enlist could hardly be held to be a willful obstruction of the service of the United States. It is to be observed that section 3 was amended by Act May 16, 1918, c. 75, § 1, 40 Stat. 553 (Comp. St. 1918, § 10212c), by omitting the words "to the injury of the service or of the United States."

[2] With respect to the fourth count, it is argued that the statements alleged could be construed as the honest expression of an individual citizen, or a reckless statement of opinion. Assuming, for the purposes of argument, that a man might express such opinions and still be loyal to his country, still, if willfully and with evil mind he uttered the language with the intention of bringing about insubordination, disloyalty, and refusal of duty in the military forces of the land, he has violated the law and is subject to punishment and should be brought to trial. His acts, his speech, and the state of his mind become matters for the consideration by a jury under proper instructions upon the law of attempt to commit crime. 2 Bishop, New Criminal Law, § 741; People v. Grubb, 24 Cal. App. 604, 141 Pac. 1051.

[3] It is next said that the court erred in admitting in evidence a copy of the address of the President of the United States to Congress under date of April 2, 1917, wherein the President stated the causes which brought the United States into the war. Rules of evidence must be construed with due regard to practical convenience. How more directly could evidence be adduced that the statements charged to have been false were false than to introduce an official public statement made in the course of official duty by the head of the government to Congress, which body, within a few days after hearing the statement, formally declared the existence of the state of war? Certainly the recommendations of the President were in no wise binding upon the members of Congress, but nevertheless the message was relevant, as bearing upon the whole question of the truth or falsity of the statements alleged to have been made by the defendant.

[4] Certain statements made by the defendant prior to the declaration of war were admitted over the objection of defendant's counsel. The court, however, in admitting such statements, expressly ruled that they were before the jury solely to enable it to determine what the defendant's state of mind was at the time he uttered the statements charged in the indictment. We find no error in the ruling; United States v. Schulze (D. C.) 253 Fed. 377; article II, Stephen's Digest on the Law of Evidence.

[5] It is said that the court erred in refusing the following request for instruction:

"You are instructed that, to constitute an attempt to commit a crime, there must be a specific intent to commit it, followed by an overt act or acts tending to the commission of such crime. There must be something more than

mere preparation remote from the time and place of the intended crime, and if such overt act is not thus remote, and is done with the specific intent to commit the crime, and directly tends in some substantial degree to accomplish it, such specific intent and overt act, taken together, are sufficient to warrant a conviction."

The court held that the mere utterance of seditious words in the presence of a person liable to military duty under the Selective Service Law, if intended to induce insubordination, disloyalty, or refusal of duty in the military forces, was sufficient to constitute an offense under the statute. We believe the court was correct in its statement of the law, and in the charge given, and that the requested instruction was confusing.

[6] The court also refused to charge that, unless the jury was satisfied that the words spoken were of a character adequate and of sufficient magnitude and proximity to the thing intended to bear out the intent charged, the defendant should be acquitted. In view of the fact that the court instructed the jury that it was necessary for the government to prove that the United States was engaged in war, and that the defendant made a false report or a false statement, and that he made it with the intent to promote the success of the enemy, and that each of these elements must be proved beyond a reasonable doubt, we believe that the essentials of the offense were sufficiently and clearly stated.

[7] It is said that the court erred in denying motion in arrest of judgment. This assignment rests upon the contention that defendant never was arraigned and never was called upon to plead. The transcript shows that, when the bill of exceptions was presented to the District Court for allowance and settlement, the words "and no issue of not guilty has ever been joined in said cause" were stricken out, and the following inserted:

"The indictment was presented May 25, 1918. May 29th it was ordered that defendant appear for arraignment June 3d. A demurrer to the indictment was filed and argued June 8th, and on the 11th the demurrer was overruled. June 12th, both Mr. Woodburn, the District Attorney, and Mr. Scanlan, attorney for the defendant, were present in court. At that time this arrangement and colloquy occurred: Mr. Woodburn: 'Both counsel for the government and for Shidler have received notice that the demurrer was overruled, and I would like to fix a date for trial; and I am willing to stipulate with counsel that he may enter his plea on the day of the trial so as to save a trip here. That is the understanding?' Mr. Scanlan replied, 'Yes:' and at that time the trial was set for July 8th. Prior to the trial, and on June 24th, the defendant filed an affidavit to procure the attendance of witnesses in his behalf at the expense of the government. An order was made in accordance with the prayer of his petition, and the witnesses were subsequently produced on the day of the trial. At that time both parties appeared, and both announced they were ready for trial. After the jury was impaneled and sworn, the clerk of this court read the indictment to the jury, and in the presence of the defendant and his counsel stated that defendant had entered a plea thereto of not guilty. No objection was made to proceeding with the case because the arraignment had not been had, and no plea of not guilty was entered. The objection was not raised until the conclusion of the trial, and after verdict was rendered."

. Under section 1698, United States Compiled Statutes 1916, it is provided in effect that when a person indicted for an offense, upon his arraignment, stands mute or refuses to plead, it shall be the duty of the

court to enter a plea of not guilty on his behalf, in the same manner as if he had pleaded not guilty thereto, and when a person pleads not guilty, and such plea is entered as aforesaid, the cause shall be deemed to be at issue, and shall proceed without further formal ceremony and be tried by a jury. In Garland v. State of Washington, 232 U. S. 642, 34 Sup. Ct. 456, 58 L. Ed. 772, the court adopted the view which had been expressed by Justice Peckham in his dissenting opinion written in Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097, wherein Justice Peckham said that a waiver should " 'be conclusively implied, where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until * * * the record was brought to the appellate court for review.' It would be inconsistent with the due administration of justice to permit a defendant, under such circumstances, to lie by, say nothing as to such an objection, and then for the first time urge it in this court." The court expressly overruled the Crain Case in so far as it was not in accord with the views expressed in the Garland Case. See, also, State v. Klasner, 19 N. M. 474, 145 Pac. 679, Ann. Cas. 1917D, 824, where it was held, upon the authority of the Garland Case, that appellant could not raise in the appellate court the question that she was not arraigned, where she had proceeded with the trial as if she had been duly arraigned, and failed to object or in any manner call to the attention of the trial court the fact she had not been arraigned.

We find no error in the record, and affirm the judgment.