## WHITE v. UNITED STATES.*

(Circuit Court of Appeals, Sixth Circuit. February 19, 1920.)

No. 3281.

1. CRIMINAL LAW 🗝1032(7)—COURT NOT JUSTIFIED IN REVERSING CONVICTION UNDER THE ESPIONAGE ACT ON ITS OWN MOTION.

In the absence of an objection, the court will not, on its own motion, reverse a conviction under Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), for saying that soldiers in camps were being mistreated, were not fed or getting proper medical attention, and were dying like flies, that army trucks would be sunk by submarines, and that murders by German soldiers were no worse than the United States soldiers did in the Philippines, under counts charging that they were made with intent to interfere with the operation or success of the naval or military forces and to promote the success of the enemy.

2. ARMY AND NAVY 🗝40 -LANGUAGE HELD TO CONSTITUTE AN OFFENSE AS CAUSING DISLOYALTY.

To say to a man subject to military or naval service that soldiers in the camps were being mistreated, not fed, nor getting proper medical attention, and were dying like flies, that army trucks would be sunk by submarines, and that murders by the German soldiers were no worse than the American soldiers did in the Philippines, violated Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), as tending to cause disloyalty, especially in connection with matters of opinion indicating an attempt to cause disloyalty.

3. INDICTMENT AND INFORMATION 🗝203—JUDGMENT WILL BE SUSTAINED, IF WARRANTED ON ONE COUNT.

A judgment of conviction under the Espionage Act would be sustained, when warranted under one of the three counts, though the language charged would not have supported conviction under the other counts.

4. ARMY AND NAVY 🗝40—MEN SUBJECT TO CALL WERE PART OF "MILITARY FORCES," WITHIN ESPIONAGE ACT.

Within Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), prohibiting false statements tending to cause disloyalty, etc., in the military or naval forces, a man within the ages subject to call was a part of the "military forces," though outside the ages then required to register, and though he had tried to enlist and been rejected.

[Ed. Note.—For other definitions, see Words and Phrases, Military Forces.]

5. ARMY AND NAVY 🗝40—THAT LANGUAGE INTENDED TO CAUSE DISLOYALTY DID NOT HAVE THAT EFFECT WAS IMMATERIAL.

That statements by defendant having a tendency to cause disloyalty on the part of a man subject to call for military service did not have that effect, and that he afterwards attempted to enlist, was immaterial.

6. CRIMINAL LAW 🗝371(1)—EVIDENCE OF OTHER OFFENSES ADMISSIBLE TO SHOW INTENT.

On a trial for violations of Espionage Act June 15, 1917,[1] evidence that at other times and places than those alleged defendant said any man ought to be hung who would do as the President had done, and send boats across the ocean to be sunk, after being warned by Germany not to do so, was admissible on the question of intent, when not too remote in time and place, though another indictment was pending, based on such statements.

* Certiorari denied 252 U. S. —, 40 Sup. Ct. 587, 64 L. Ed. —.
[1] Title 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h).

7. CRIMINAL LAW ⊕=1036(1)—ON TRIAL UNDER ESPIONAGE ACT, EVIDENCE OF FAILURE TO SUBSCRIBE TO WAR LOANS NOT REVERSIBLE ERROR, WHERE NO OBJECTION WAS MADE.

On trial for violations of Espionage Act June 15, 1917, evidence that defendant had not subscribed, save to a trifling amount, to any of the war loans, and, after being indicted, refused to do so, was not reversible error, where no objection was made at the time.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

John White was convicted of an offense, and he brings error. Affirmed.

Geo. F. Eshenroder, of Sandusky, Ohio, for plaintiff in error.
Warren P. Dillon, Asst. U. S. Atty., of Fostoria, Ohio.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. White asks review of his conviction for violation of section 3, tit. 1, of Act June 15, 1917, 40 Stat. 219 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), commonly known as the First Espionage Act. This statute seems to recognize three more or less distinct offenses, and the first one may be subdivided into two, whereby we have four: (1) False statements with intent to interfere with the operation or success of the military or naval forces; (2) false statements with intent to promote the success of the enemy; (3) causing, or attempting to cause, insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces; (4) obstructing the recruiting or enlistment service. The indictment against White charged the first three of these; it omitted the fourth. He was found guilty, generally, and he was sentenced to a penalty which might have been imposed upon any one of the three counts.

In particular, his offense was that he made certain false reports or statements to, or in the presence of, two citizens, one 35 and one 58 years old. Some of these statements may be laid aside as being matter of opinion; but, even then, there remained others which, if effectively made, would distinctly tend to discourage or interfere with recruiting or enlistment in the army or navy and to cause disloyalty in the military or naval forces. They were (1) that the soldiers in the camps were being mistreated, were not fed, were not getting proper medical attention, and were dying off like flies; (2) that the army trucks, under construction in that vicinity, would never get across, as they would be sunk by the submarines; and (3) that the murder of innocent women and children by the German soldiers was no worse than the United States soldiers did in the Philippines.

The jury was fully instructed upon the necessity of finding that the statements made were willfully false and were made with the intent named in the statute; and that the 35 year old hearer was a part of "the military and naval forces of the United States." No requests to charge were made, nor was exception taken to the charge; but in spite of all informality we are inclined to examine the vital questions which were argued to us.

⊕=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] It may be that the more immediate effect of such conduct on White's part would be to obstruct the recruiting or enlistment service, and that its effect to interfere with the success of the military or naval forces, or promote the success of the enemy, would be so much more indirect and consequential that a prosecution under the fourth of these subdivisions, as we have stated them, would have been more logical than one under the first and second. However, this objection was not made in the court below or in this court, and there is sufficient room for thinking that such conduct may fall within the first and second subdivisions, as well as the fourth, so that we would not be justified in interfering, on our own motion, with a conviction on the theory of the first two counts.

[2, 3] In any event, we think these statements, when made directly to a man subject to military or naval service, had a distinct and obvious tendency to cause disloyalty, and therefore would be an offense under our third subdivision. This is additionally clear when they are considered in connection with the others, which we said might be laid aside, because possibly matters of opinion, but which would not be, for that reason, eliminated as elements of an attempt to cause disloyalty. They were (4) that the United States was never a neutral nation; (5) that the people lost on the Lusitania had no right to be there, because German officials had warned them to stay off; and (6) that this government had no business going into the war. Thus there would be ample basis for conviction under the third count; that is enough to sustain the judgment. Claasen v. U. S., 142 U. S. 140, 146, 12 Sup. Ct. 169, 35 L. Ed. 966.

[4, 5] So far as the substantial matter of law involved was in doubt at the time of the trial, it has since become settled. That men, of military age, who have been registered and enrolled under the Selective Service Act (Comp. St. §§ 2044a–2044k), are part of the military forces of the United States, has been substantially held by the Supreme Court. Debs v. U. S., 249 U. S. 211, 217, 39 Sup. Ct. 252, 63 L. Ed. 566. So far as this classification is concerned, there is no reason for distinguishing out from all subject to call (Act April 22, 1898, c. 187, 30 Stat. 361) those who had been moved one step nearer to active service by the 21–31 age registration of June, 1917; those from 31 to 45 were only in the next class of reserve. This was the view taken by the court upon the trial below, and, in the language of the Supreme Court in the Debs Case, "we see no sufficient reason for differing from the conclusion." If it were a fact that the man addressed had tried to enlist and had been rejected, that would be of no controlling importance; he was still subject to call, either for general or special service. If his attempted enlistment was after White's talk, it would be immaterial that the statements did not in fact have any effect. U. S. v. Krafft (C. C. A. 3) 249 Fed. 919, 924, 162 C. C. A. 117, L. R. A. 1918F, 402.

That such statements as these, even if not made directly to any person subject to military and naval service, would tend to create disloyalty in the local community, and hence be sure to reach and be likely to affect unknown members of the class, is a further considera-

tion having some tendency to support the government's theory and which has been thought of itself sufficient. Kirchner v. U. S. (C. C. A. 4) 255 Fed. 301, 166 C. C. A. 471. But we have no occasion to rely upon that proposition.

[6] Aside from the claim that the evidence did not justify the conviction, and certain exceptions to the allowance of specific questions asked of one or another witness—which exceptions have no merit—the only point now urged is that evidence was admitted regarding a considerable number of statements made by White which were not alleged in the indictment, and which were not made at the same time and place as the statements counted upon. The chief of these was that any man ought to be hung who would do as the President had done, and send boats across the ocean to be sunk, after he had been warned by the Germans not to do so. It is a sufficient reply to this contention to say that where, as here, the question of intent is all-important, the respondent's similar conduct, at a time and place not too remote, may be proved to show that intent, even if it also shows a separate offense. Shea v. U. S. (C. C. A. 6) 236 Fed. 97, 149 C. C. A. 307. This rule is not changed because it may happen—as was here the case—that another indictment is pending, based upon these other statements. That fact emphasizes the theory that the two statements constituted two offenses, but it does not bear against the admissibility of either as tending to show the intent accompanying both.

[7] Complaint is also made of the admission of evidence that White had not subscribed, save to a trifling amount, to any of the governmental war loans, and that, upon a visit by a committee after this indictment was found, he refused to do so, because he was being prosecuted. We doubt whether this evidence bore directly enough on his intent at the earlier period, in order to make it admissible; but no objection was made at the time, there is no probability that it was substantially prejudicial, and it cannot be considered reversible error.

The judgment is affirmed.