## WIMMER v. UNITED STATES.*

(Circuit Court of Appeals, Sixth Circuit. March 12, 1920.)

No. 3253.

1. **War ⬪⇒4 — Espionage Act not invalid under constitutional provision as to treason.**

The provision of Espionage Act June 15, 1917, § 3, as amended by Act May 16, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), making it an offense, by word or act, to support the cause of any country with which the United States is at war, or to oppose the cause of the United States, is not, as applied to conduct consisting of words only, unconstitutional as punishing treasonable conduct, without proof of the overt act, and without the two witnesses required by the Constitution, as neither words nor intent alone constitutes treason.

2. **War ⬪⇒4—Acts or words of seditious nature punishable, notwithstanding constitutional provision.**

Congress may punish, under the ordinary rules of prosecution and without trenching on the constitutional limitation as to treason, acts or words which are of a seditious nature and tend towards treason, but which are not of the direct character and degree constituting treason.

3. **Treason ⬪⇒6—Adherence and giving aid both necessary and favoring or supporting insufficient.**

Under the constitutional definition of "treason" as adhering to the enemies, giving them aid and comfort, both adherence and giving aid are necessary, and to favor or support the enemy is insufficient.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Treason.]

4. **Criminal law ⬪⇒371(1)—Similar statements admissible to show intent.**

In a prosecution under Espionage Act June 15, 1917, § 3, as amended by Act May 16, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), for favoring the cause of the enemy and opposing that of the United States, statements similar to those alleged in the indictment, but made about the same time and place, were admissible to show intent, and it was immaterial that they were repetitions of those alleged.

5. **War ⬪⇒4—Language made question for jury as to favoring enemy and opposing cause of the United States.**

A defendant charged under the Espionage Act June 15, 1917, § 3, as amended by Act May 16, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), with saying that America did not have a chance to win the war, that the President started the war to protect Wall Street brokers, that the President was a friend of the rich man, and that the Kaiser was a friend of the poor man, was not entitled to a directed verdict, on the theory that there was no such favoring of the enemy and opposing of the government as tended to a clear and present danger.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Peter Wimmer was convicted of an offense, and he brings error. Affirmed.

Fred W. Schmitz, of Covington, Ky., for plaintiff in error.

Thos. D. Slattery, U. S. Atty., of Covington, Ky.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

---

⬪⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 252 U. S. ——, 40 Sup. Ct. 586, 64 L. Ed. ——.

DENISON, Circuit Judge. The plaintiff in error was convicted of a violation of the so-called Second Espionage Act, being section 3 of title 1 of the Act of June 15, 1917, as amended May 16, 1918 (40 Stat. 553 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c]). The indictment is based wholly upon what may be called clause 10 of the amendatory act, which reads:

"Whoever 'shall by word or act support or favor the cause of any country with which the United States is at war or by word or act oppose the cause of the United States therein, shall be punished. * * *"

Upon the trial, the third count of the indictment was withdrawn, and the conviction was under the first and second counts. These, in distinctive form, allege that Wimmer, while the United States was at war, did, by words and acts (1) support and favor the cause of Germany, and (2) oppose the cause of the United States therein.

Wimmer's conduct, by which it is alleged he broke this law, was that, on June 26, 1918, he made statements, willfully, unlawfully, and feloniously, which were in substance and effect as follows:

"That America did not have a chance to win this war; that President Wilson started the war to protect the Wall Street brokers, who had purchased English and French securities; that President Wilson was a friend of the rich man; and that, when he [Wimmer] was in Germany about six years ago, he found that the Kaiser was always a friend of the poor man."

The trial court submitted to the jury, as questions of fact, whether Wimmer made these statements, whether they were by him deliberately intended to support and favor the cause of the enemy or oppose the cause of the United States in the war, and whether they were, and were known to Wimmer to be, suitable and likely to produce that effect.

[1, 2] 1. As the case is presented to us, Wimmer's first position is that the act is unconstitutional, because it punishes treasonable conduct, without proof of the overt act and without the two witnesses thereto required by the Constitution. As we understand the argument, it is, in substance, that adhering to and giving aid and comfort to the enemy is treason, according to the constitutional definition; that to support the cause of the enemy, or oppose that of the United States, against the prohibition of the Espionage Act, is adhering to and giving aid and comfort to the enemy, and is therefore treason; and hence that it cannot be punished unless shown by the degree of proof required by the Constitution. A very similar contention was summarily overruled by the Supreme Court in Frohwerk v. U. S., 249 U. S. 204. 210, 39 Sup. Ct. 249, 63 L. Ed. 561.

If we had to do with a case where the conduct which was prosecuted consisted of acts, we would have to consider the line of reasoning upon which Wimmer depends. That Congress has power to take hold of an act which is, in fact, treason, and to say that it shall be severely punished, without the proof which is required to establish treason, and to justify this result because the conduct is given another name, is a proposition which we have no occasion to affirm or deny. Here the only conduct alleged or proved, as making out the offense, consisted of oral statements—words only. It is well settled that one can-

not, by mere words, be guilty of treason (38 Cyc. 954, and cases cited), and thus the fallacy of Wimmer's contention becomes apparent. It is a mistake to say that the intent is the thing which makes the treason, and that where the disloyal intent is there treason is. The requirement that there shall be two witnesses is purely evidential, but when the requirement is extended to proof of the overt act, it becomes clear that there must be an overt act to constitute the crime, and the act is incorporated into the definition. Thus we find, in the constitutionally defined crime, two elements, the intent and the act; neither is dominant. Intent minus act is not treason, any more than act minus intent is. Since it was declared by Chief Justice Marshall in the Bollman Case, 4 Cranch, 75, 2 L. Ed. 554, it has never been doubted that Congress may punish, under the ordinary rules of prosecution and without trenching upon the constitutional limitation as to treason, acts which are of a seditious nature and tend toward treason, but which are not of the direct character and superdangerous degree which would meet the constitutional test and make them treason; and even more must this be true of words.

[3] Further distinction is found in the very words of the constitutional definition. Treason is "adhering to their enemies, giving them aid and comfort." Both adherence and giving aid are necessary. To "favor or support" is, very likely, to "adhere"; but it does not carry the idea of giving aid and comfort, unless by a rather remote implication. Hence it may well be said that adherence by words only is an offense quite distinct from treason.

[4] 2. Evidence was received showing that Wimmer made other statements substantially like those alleged in the indictment and proved, and at about the same time and place These were clearly admissible as showing intent, and they were admitted for that purpose only. We have covered this question by what is said in the opinions in White v. U. S., 263 Fed. 17, —— C. C. A. —— (filed February 19, 1920), and Schoborg v. U. S., 264 Fed. 1, —— C. C. A. —— (this day filed). It is also urged that these other statements were identical with those named in the indictment, and so could add nothing to the inference of intent. On the contrary, each repetition of such statements confirms the thought that they were deliberately intended to produce their natural effect, rather than merely impulsive and casual.

[5] 3. Whether Wimmer is protected by the constitutional guaranty of free speech may not be overlooked, though the point has not been expressly made below or here. We have discussed this subject in the Schoborg opinion, and while Wimmer's conduct was, in degree by no means as extreme as was the conduct of the respondents in the Schoborg Case in constituting that "favoring" of the enemy and "opposing" of this government which tends to "clear and present danger," and which the statute could rightfully prohibit, yet we do not think he was, as matter of law, entitled to be acquitted for this reason. Schaefer v. U. S. (U. S. S. C., filed March 1, 1920) 251 U. S. 466, 40 Sup. Ct. 259, 64 L. Ed. ——. No question excepting the broad one of a right to an instructed verdict, arises on the subject, on this record.

The judgment is affirmed.