## BUTLER et al. v. UNITED STATES.

### No. 8338.

Circuit Court of Appeals, Seventh Circuit.

Nov. 30, 1943.

George L. Vaughn, of St. Louis, Mo., and Morris B. Chapman, of East St. Louis, Ill., for appellants.

Ray M. Foreman, of Danville, Ill., and Ernest R. McHale, Asst. U. S. Atty., of E. St. Louis, Ill., for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Defendants, General Lee Butler and David D. Erwin, appeal from a judgment of conviction entered by the court after a trial without a jury under an indictment in two counts. The first count charged them and the Pacific Movement of the Eastern World, Inc., and John Doe, a Japanese, with violating Section 34, Title 50 U.S.C.A., in that, the United States being at war, the defendants entered into a conspiracy to violate Section 33, Title 50 of the U.S.C.A., by wilfully causing and attempting to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States. The second count charged them with conspiracy to violate the provisions of Section 11 of the Selective Training and Service Act of 1940, Title 50 Appendix, § 311, of the U.S.C.A.

The first count of the indictment in substance charges that for the purpose of obstructing the recruiting and enlistment service of the United States, the defendants, at meetings of the defendant Pacific Movement of the Eastern World, would make speeches to members of the military and naval forces of the United States and to persons liable for training and service under the Selective Training and Service Act of 1940, designed to mislead and corrupt the patriotic, loyal and law abiding population of the colored people of East St. Louis, Illinois. This count of the indictment alleges the substance of the speeches and sets forth overt acts in pursuance of and to effect the object of the conspiracy.

A large number of witnesses were heard and the evidence was conflicting in many respects. The trial judge to whom the law commits the determination of the credibility of the witnesses and of the weight to be accorded to the testimony, considered these conflicts in the evidence and found that both defendants co-operated to inculcate in the minds of the members of P.M.E.W. a belief that Japan would soon invade and conquer the United States and that Japan would be friendly to the colored people of America. They also encouraged the thought that the colored soldiers of America should not fight colored soldiers of other nations. The court concluded that the efforts of the defendants continued unabated after a state of war existed between the United States and Japan and that such representations of the defendants were intended to cause disloyalty and refusal of duty in the military and naval forces of the United States, and established a conspiracy as to each defendant. Under such circumstances we are bound to adopt the facts and all favorable inferences reasonably and naturally to be drawn therefrom in the light most favorable to the plaintiff.

The facts: The Pacific Movement of the Eastern World originated in the early part of 1933. It was incorporated under the laws of Missouri on September 23, 1933. Erwin was its president from 1934 until 1940 and thereafter was its national adviser. Butler was its president from 1940 to the latter part of 1942.

In 1933, one Satohato Takahashi, a Japanese, employed Policarpio Manansala, also known as Takis or DeGuzman, to promote the idea that Japan was the champion

of the colored peoples of the world and of the negroes of the United States. Manansala also participated in the organization of the P.M.E.W. and spent several months in spreading such propaganda among the negroes in Chicago; he engaged in similar work in other cities until the latter part of 1935. The P.M.E.W. grew, and in September of 1938 it had a membership estimated at a million members. On September 11, 1938, a meeting of the P.M.E.W. was held at East St. Louis at which defendant Erwin made the principal address in which he stated that Japan had organized the P.M.E.W. and was the champion of all dark and colored races.

On June 18, 1939, a meeting of the P.M.E.W. was held at a hall in St. Louis, Missouri, at which Erwin introduced one Uyeda, a Japanese, who, in speaking to the audience, stated that the war between Japan and China might extend farther, and that some day the Little Angel from the East would come to America and liberate the black people from the yoke of the white man.

In the fall of 1939 Erwin stated that the Japanese had entrusted the development and activities of the P.M.E.W. to him. Thereafter he spent several months in working among the different branches of the P.M.E.W. and at these meetings he reiterated the statement that the Japanese were the champions of the negroes; that the Japanese would probably invade America; and that by joining the P.M.E.W. they [members of the P.M.E.W.] might be kept out of the War.

In 1939 Erwin became a district Bishop of the Triumph Church of the New Age and thereafter spent much of his time uniting branches of the P.M.E.W. to that Church. After December 8, 1941, in his talks to the members of the P.M.E.W., he said he had the power to make them ministers and that in the event they became ministers they would not be drafted for the armed services. Defendant Butler was present at most of the meetings at which Erwin made such statements and was or-

dained as a minister by Erwin on July 11, 1939. Erwin also ordained approximately one hundred other persons.

In July of 1941, in East St. Louis, one E. A. Brewster spoke at two meetings of the P.M.E.W. In introducing Brewster to the audience, Butler stated that he approved of whatever Brewster said and that the black race should follow Brewster's advice. In his address Brewster stated that eventually the white race would devour itself and the colored race would rule the world, and advised those interested in staying out of the war to communicate with him.

Thereafter, from January to May of 1942, meetings of the P.M.E.W. were held at East St. Louis and were attended by men registered under the Selective Training and Service Act, as well as by Erwin and Butler. At these meetings Erwin and Butler stated that Japan was the champion of the negroes; that the negroes should not go to war; that this was a white man's war; that Japan would invade and conquer the United States; that the negroes should join the P.M.E.W., so that upon invasion they would be protected; and that members of the P.M.E.W. as members of the Triumph Church of the New Age could escape being drafted by becoming ministers in Triumph Church.

The first question to be considered is defendants' contention that the trial court erred in admitting evidence bearing upon the activities of the P.M.E.W. and the defendants, and the utterances made by them prior to the existence of war between the United States and Japan. This evidence was admitted upon the theory that it had a bearing upon the "intent, state of mind, purpose and associations of the parties."

We think the evidence was properly admitted. Support for our opinion is found in many cases in which the identical question has arisen and been decided adversely to defendants.[1] It will suffice if we quote only from three of these cases.

[1] Deason v. United States, 5 Cir., 254 F. 259; Rhuberg v. United States, 9 Cir., 255 F. 865; Kirchner v. United States, 4 Cir., 255 F. 301; Coldwell v. United States, 1 Cir., 256 F. 805; Herman v. United States, 9 Cir., 257 F. 601; Shidler v. United States, 9 Cir., 257 F. 620; United States v. Schulze, 9 Cir., 253 F. 377; Schulze v. United States, 9 Cir., 259 F. 189; Equi v. United States, 9 Cir., 261 F. 53; Partan v. United States, 9 Cir., 261 F. 515; Howenstine v. United States, 9 Cir., 263 F. 1; White v. United States, 6 Cir., 263 F. 17; Schoborg v. United States, 6 Cir., 264 F. 1; Wimmer v. United States, 6 Cir., 264 F. 11; Bold v. United States, 9 Cir., 265 F. 581; Dierkes v. United States, 6 Cir., 274 F. 75. See also United States v. Pelley, 7 Cir., 132 F.2d 170.

In the Deason case, Deason v. United States, 5 Cir., 254 F. 259, the defendant was convicted of a violation of the Espionage Act. There, as here, it was claimed that the court had erred in the admission of evidence. In discussing the question, the court said: "Statements made by the defendant, indicating his hostility to the draft, whether made before or after they became punishable by the Espionage Act, * * * might serve to illustrate to the jury the purpose with which he made the threats alleged to have been made after the approval of the Espionage Act, and which were alone relied upon as a ground for conviction." 254 F. at page 260.

In the Schoborg case, Schoborg v. United States, 6 Cir., 264 F. 1, proof of other similar statements (not alleged in the indictment) was allowed to go to the jury as evidence of the intent with which the defendants spoke the words charged. Objection was made, because this amounted to proving other similar offenses, in violation of the familiar rule. The court at page 7 of 264 F. said: "We had occasion to consider this subject carefully, in Shea v. United States, 6 Cir., 236 F. 97, 102, * * *; it being there necessary to make an application of the exception, as familiar as the rule, which permits evidence of other crimes or offenses when the intent with which defendant acted in the matter charged is important, and when these other things throw light on that intent. We think these espionage prosecutions furnish clear instances of the proper application of the exception. The intent with which the words charged are spoken is a vital element of the offense. Whatever tends to show the defendant's state of mind on this subject-matter at the time of the speaking of the words charged is very clearly admissible for that purpose."

In the Dierkes case, 274 F. 75, the Government was allowed to introduce evidence of statements made before the passage of an amendment to the Espionage Act. Defendants objected, on the ground that the statements added nothing to the intent normally attending the words used in the indictment. The court held no error was committed since that evidence tended to show an attitude of hostility and a spirit of disloyalty toward the United States.

■ The next objection is in admitting in evidence the written statement made by defendant Butler at a police station on September 15, 1942, while under arrest and before he was taken before a committing officer. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. ——, and Anderson v. United States, 318 U. S. 350, 63 S.Ct. 599, 87 L.Ed ——. Even so, in a trial before the court without a jury, the admission of evidence claimed to be inadmissible is to be regarded as having been harmless, unless it clearly appears that otherwise the findings would have been different, Topolewski v. State, 130 Wis. 244, 109 N.W. 1037, 7 L.R.A.,N.S., 756, 118 Am.St.Rep. 1019, 10 Ann.Cas. 627, and when guilt is clearly established by competent evidence, error in the admission of the other evidence which does not affect the substantial rights of the accused does not call for the reversal of a conviction, Guy v. United States, 71 App.D.C. 89, 107 F.2d 288. We regard the admission of the statement as immaterial because Butler voluntarily testified before the grand jury and before the trial judge. In so doing, he substantiated and elaborated upon the things which he had said in his statement of September 15, 1942. Furthermore there was testimony of other witnesses establishing and corroborating the statement. The most that can be said of the statement is that it recited the origin and development of the P.M.E.W. in 1933 and its revival in 1939. The other matters mentioned therein related to Erwin. As to those matters, the court stated that they would not be considered against Erwin.

Defendants next contend that the evidence was insufficient to sustain a finding of guilty.

The argument is that even though the utterances were false and had been made by the defendants, nevertheless, they were not of such a nature as to obstruct the recruiting and enlistment service of the United States or to bring about insubordination, disloyalty and refusal of duty in the military and naval forces of the United States.

■ To establish a violation of the Act, it is not necessary to prove that the defendants actually obstructed the recruiting and enlistment service, or that by their remarks and actions they brought about insubordination, disloyalty and refusal of duty in the military and naval forces of the United States. Rhuberg v. United States, 9 Cir., 255 F. 865; Heynacher v. United States, 8 Cir., 257 F. 61; Equi v. United States, 9 Cir., 261 F. 53; Wessels v. United States, 5 Cir., 262 F. 389; United States

v. Pelley, 7 Cir., 132 F.2d 170. The real question is whether the words used, were used in such circumstances and were of such a nature that they would have a tendency to 'cause insubordination, disloyalty, and refusal of duty in the military and naval forces of the United States. Pierce v. United States, 252 U.S. 239, 40 S.Ct. 205, 64 L.Ed. 542. It is a question of proximity and degree. When a nation is at war many things that might be said in time of peace are such a hindrance to its effort that their utterance will not be endured so long as men fight, Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470, and while it is true that not every false statement or evil intent with which words are spoken affords the basis of a charge of violating the section of the statute here involved, yet the words and the circumstances under which they were uttered must be considered. Their harmlessness, or their poison (or ability to poison) must be studied in determining whether the utterances had a tendency to and were intended to produce the forbidden results. United States v. Pelley, 7 Cir., 132 F.2d 170, 178. Whether the utterances were such "as to create a clear and present danger," Schenck case, supra, 249 U. S. at page 52, 39 S.Ct. at page 249, 63 L.Ed. 470, and what were defendants' motives and what interpretations ought to be placed upon the words used, were questions of fact to be determined by the trial judge, and the court having resolved those facts upon conflicting evidence, against the defendants, we are, under the well established rule, bound by his findings.

Finally, the point is made that the second count of the indictment is invalid, in that it designates the date of the beginning of the offense prior to the effective date of the Selective Training and Service Act of 1940.

We think there is no merit in this contention, since the law is well settled that where the indictment—and such is the fact in this case—contains an allegation of the continuance of the conspiracy subsequent to the passage of the statute and up to the date of the indictment, and there is evidence of acts constituting part of the conspiracy having been committed after the effective date of the statute, the indictment is not invalid, Bryant v. United States, 5 Cir., 257 F. 378. But, even if we are in error, that fact could not avail the defendants.

In our case, defendants were respectively sentenced upon each of the two counts, Butler to two years and Erwin to four years. The sentence of imprisonment in each case was made to run concurrently on both counts, the longest term of imprisonment, as to the two counts, being in each instance upon the first count. Under these circumstances, the first count being sufficient to sustain the judgment, the other count need not be considered, Brooks v. United States, 267 U.S. 432, 441, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407; Aczel v. United States, 7 Cir., 232 F. 652, 662; Doe v. United States, 9 Cir., 253 F. 903; and United States v. Feinberg, 7 Cir., 123 F.2d 425.

We have now considered all of the claimed errors argued by counsel for defendants and, being convinced that no error has occurred justifying a reversal, the judgment of the District Court will be affirmed.

It is so ordered.